IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DWIGHT BISHOP, JR.                    :

                                      :

      v.                             :    Civil Action No. DKC 11-1100

                                      :

BOARD OF EDUCATION OF CALVERT
COUNTY                                :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this employment discrimination case is a motion to dismiss filed by Defendant, the Board of Education of Calvert County ("the Board"). (ECF No. 14).[1] The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

## I. Background

### A. Factual Background

The following facts are alleged in the complaint. (ECF No. 2). Plaintiff Dwight Bishop, an African-American, was hired by the Board in 1996 as an In-School Suspension Assistant. In 2008, he was promoted to Assistant Supervisor of Warehouse and Transportation. He is currently employed in that capacity.

---

[1] The complaint incorrectly identifies the Board as "Calvert County Public Schools."

Shortly after his promotion, Plaintiff "began noticing a pattern of discrimination against black employees[.]" (*Id.* at ¶ 9). In November 2008, he observed that the employees working in the warehouse, who were predominantly African-American, were not provided with custodial services while other buildings and departments received those services. Plaintiff complained to Deborah Pulley, Executive Director of School Operations, about this alleged disparate treatment. Ms. Pulley asked Tammy McCourt, Chief Budget and Finance Officer, to address the complaint, but she failed to do so. It was only after Plaintiff lodged further complaints with Ms. Pulley that custodial services were provided to warehouse employees.

In July 2009, two supervisors required Plaintiff to "turn in a weekly schedule showing his location at all times." (*Id.* at ¶ 17). Plaintiff observed that "white employees who split their time between two departments . . . had no [] such requirement imposed on them." (*Id.*).

Plaintiff received a work evaluation in September 2009 that was less favorable than prior evaluations. He met with his direct supervisor, Edward Cassidy, to discuss the evaluation, but Mr. Cassidy did not offer a meaningful explanation for the lower scores. When Plaintiff asked why he received a lower score for "Communication and Interpersonal Relations," the supervisor refused to discuss the evaluation further and

stripped Plaintiff of one of his duties without explanation. (*Id.* at ¶ 11). Although Mr. Cassidy told Plaintiff that he "doesn't give 5's" – apparently, the highest evaluation score – Plaintiff later learned that a Caucasian employee, Kevin Hook, "received '5's' on his evaluation." (*Id.* at ¶ 13). According to Plaintiff, Mr. Cassidy "was using a different rating system for him than he was using for white employees[.]" (*Id.*).

On October 6, 2009, Mr. Cassidy initially denied Plaintiff's request for bereavement leave following the death of his aunt, advising him, "[t]here is no bereavement leave for step-aunts." (*Id.* at ¶ 14). Plaintiff's leave request was later granted, but only after he engaged Mr. Cassidy "in a lengthy explanation about his family tree" and "copied Ms. Pulley on an email." (*Id.*). Plaintiff asserts that when a white employee requested bereavement leave, Mr. Cassidy did not question the employee's relationship with the deceased.

The complaint recites several other examples of racially discriminatory treatment by Mr. Cassidy without specifying when the events occurred. On one occasion, "Mr. Cassidy questioned [Plaintiff] about how he could afford a nice car," but "never questioned white employees as to how they could afford their cars[.]" (*Id.* at ¶ 15). On another occasion, Mr. Cassidy interfered with an order that a new laptop computer be provided to Plaintiff, directing him to use a spare computer instead. At

around the same time, however, "Mr. Cassidy did not interfere with the purchase of [a] white employee's desktop [computer]." (*Id.* at ¶ 16).

Plaintiff submitted a written complaint of race discrimination to the director of the human resources department on October 21, 2009. Ms. Pulley subsequently advised Plaintiff that the Board's investigation determined "the issue was not discrimination, but miscommunication." (*Id.* at ¶ 19). Plaintiff learned from Assistant Superintendent Jeff Walker that "Mr. Cassidy's behavior had 'improved' during the course of the investigation and that the improved behavior would result in more fair evaluations in the future." (*Id.*).

Thereafter, according to Plaintiff, his supervisors "began engaging in retaliatory behavior" related to his complaint. (*Id.* at ¶ 20). Ms. Pulley refused to speak to Plaintiff, ignoring and walking past him when he attempted to address her. When another employee witnessed this conduct, the employee asked Plaintiff, "What did you do to her?" (*Id.*). Plaintiff asserts that the "retaliation escalated on February 24, 2010," when Ms. McCourt issued him an unwarranted verbal reprimand, purportedly for "not reporting to the proper work location" and "filling out [a] . . . [t]ime [f]orm at work," rather than off-the-clock. (*Id.* at ¶ 21). According to Plaintiff, "white employees, such

as Mr. Hook and Mr. Cassidy, have filled out these forms at work without any reprimand." (*Id*.).

### B.   Procedural Background

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 25, 2010, and a right to sue letter was issued on March 3, 2011.   Soon thereafter, he commenced this action in the Circuit Court for Calvert County, Maryland, by filing a complaint alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"), and Title 20 of the State Government Article of the Annotated Code of Maryland, Md. Code Ann., State Gov't §§ 20-601, *et seq*. ("Title 20").   (ECF No. 2).   The complaint also alleges negligent supervision and retention and intentional infliction of emotional distress under Maryland law.

The Board timely removed to this court on April 27, 2011 (ECF No. 1), and, on May 3, filed the instant motion to dismiss. (ECF No. 14).

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint.   *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S.

266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## III. Analysis

### A.   Timeliness of the Administrative Complaint

The Board moves to dismiss portions of count one and all of count two, alleging racial discrimination under Title VII and Title 20, for lack of subject matter jurisdiction, arguing that Plaintiff's administrative complaint was not filed in a timely manner. Because "a failure to exhaust administrative remedies based on untimely filings is not an issue of subject matter jurisdiction," dismissal under Rule 12(b)(1) would be improper. *Brown v. McKesson Bioservices Corp.*, Civ. No. DKC 05-0730, 2006 WL 616021, at *3 (D.Md. Mar. 10, 2006); *see also Zipes v. Trans*

*World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (the requirement that a plaintiff timely exhaust administrative remedies is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). Nevertheless, "Rule 12(b)(6) motions may properly raise statute of limitations defenses where the defense is apparent from the face of the complaint." *Douglass v. NTI-TSS, Inc.*, 632 F.Supp.2d 486, 491 (D.Md. 2009). Here, the untimeliness defense is apparent from the face of Plaintiff's complaint and the court will consider Defendant's argument under Rule 12(b)(6).

"Timeliness requirements for an action alleging employment discrimination are to be strictly enforced." *Tangires v. Johns Hopkins Hosp.*, 79 F.Supp.2d 587, 597 (D.Md. 2000) (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)). In the usual case, Title VII claimants must file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory practice. *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). This period is extended to 300 days in a deferral state, *i.e.*, one in which "state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-5(e)(1)). Maryland is a deferral state and its deferral agency, the Maryland Commission on Human Relations

("MCHR"), has a work sharing agreement with the EEOC whereby a claim filed with one agency is deemed as filed with both. *See Valderrama v. Honeywell Tech. Solutions, Inc.*, 473 F.Supp.2d 658, 662 n.4 (D.Md. 2007). Thus, in Maryland, the time for filing a charge of discrimination under Title VII is 300 days.

Complainants must also exhaust discrimination claims brought under Maryland state law prior to filing suit. In Maryland, "[a]ny person claiming to be aggrieved by an alleged discriminatory act may file a complaint with the [MCHR]." Md. Code Ann., State Gov't § 20-1004(a). Pursuant to § 20-1004(c), such a complaint must be "filed within 6 months after the date on which the alleged discriminatory act occurred" and "[a] complaint filed with a federal or local human relations commission within 6 months . . . shall be deemed to have complied[.]" The requirements for filing a civil action in state court are set forth in § 20-1013(a), which provides, in relevant part, that the complainant must have "initially filed a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the respondent[.]"

The parties dispute how the state law provisions should be interpreted. According to the Board, § 20-1004(c) requires that an administrative complaint be filed with the EEOC, MCHR, or a local agency within six months of the alleged discrimination

and, because Plaintiff does not allege that any discriminatory acts occurred within six months prior to the date he filed his EEOC complaint, count two should be dismissed in its entirety.[2] Plaintiff argues that his administrative complaint was timely under federal law – *i.e.*, it was filed within 300 days of the alleged discrimination – thus, he has satisfied the requirement for bringing a civil action under § 20-1013(a).

Title 20 of the State Government Article was created in 2009 as a result of the recodification of Article 49B. As relevant here, § 20-1004(c) of the State Government Article and former Article 49B, § 9A, are identical; thus, courts rely on judicial interpretations of the earlier statute in construing the latter. *See Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 778 n.3 (D.Md. 2010). The Court of Special Appeals of Maryland discussed the timeliness requirement of former Article 49B, § 9A, in *Broadcast Equities, Inc. v. Montgomery County*, 123 Md.App. 363, *vacated on other grounds*, 360 Md. 438 (1998). In that case, the court considered an argument that a local ordinance requiring that complaints be filed within one year of the alleged discriminatory act

---

[2] The complaint recites that "a contractor's black employee" was the victim of disparate treatment in "early 2011" (ECF No. 2 ¶ 18), but that alleged event occurred after the EEOC complaint was filed and does not appear to be relevant to Plaintiff's disparate treatment claim. Thus, it will not be considered.

impermissibly conflicted with Article 49B, § 9A, which provided only six months. The court "perceive[d] no conflict" between the two provisions, explaining:

> To be sure, a complaint made under State law must be filed with a federal or local commission within six months, in accordance with the last sentence of Art. 49, § 9A. The last sentence indicates the Legislature's recognition that filing deadlines under local or federal law may differ from State law. Although filing with a local human relations commission after six months would preclude a complainant from later seeking a State Human Relations Commission investigation, this does not preclude a local commission from pursuing a discrimination claim.

*Broadcast Equities, Inc.*, 123 Md.App. at 394-95. As this passage illustrates, the predecessor to § 20-1004(c) addressed the time for triggering an investigation of a claim by MCHR. *See McNutt v. Duke Precision Dental & Orthodontic Labs., Inc.*, 698 F.2d 676, 678 (4th Cir. 1983) ("The Court of Appeals of Maryland has observed that the filing of a complaint with Maryland's Human Relations Commission 'merely triggers the investigative process.'") (quoting *Banach v. State Commission on Human Relations*, 277 Md. 502, 513 (1976)). Indeed, Article 49B did not provide a private right of action until October 1, 2007, when § 11B took effect. *See Ragland v. A.W. Industries, Inc.*, Civil Action No. DKC 2008-1817, 2009 WL 2507426, at *11 (D.Md. Aug. 13, 2009). In 2009, Art. 49B, § 11B, was repealed and

replaced by the substantively similar Md. Code Ann., State Gov't § 20-1013(a), which now requires, *inter alia*, the filing of "a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the respondent" prior to filing a civil suit. Thus, under § 20-1004(c), a complainant may initiate an investigation by MCHR by filing a complaint with a federal, state, or local enforcement agency within six months. He exhausts his administrative remedies for purposes of commencing a civil action, however, by filing an administrative complaint within the time allotted by "federal, State, or local law," pursuant to § 20-1013(a). Because the time for filing under federal law is 300 days in Maryland, Plaintiff had the same amount of time to exhaust his state law claims.

The complaint recites that Plaintiff "filed a charge of discrimination against [the Board] with the [EEOC] on or about June 25, 2010, complaining of the acts of discrimination and retaliation alleged herein." (ECF No. 2 ¶ 2). The alleged acts of discrimination occurred between November 2008 (*id*. at ¶ 9) and October 2009 (*id*. at ¶ 14), but Plaintiff's EEOC complaint was timely only for acts alleged to have occurred on or after August 30, 2009, *i.e.*, within 300 days of its filing. The discriminatory acts occurring during that time frame that are both alleged in Plaintiff's complaint and pressed in his

11

memorandum opposing the instant motion are those related to the September 2009 performance evaluation and the February 2010 verbal reprimand. Accordingly, the court will limit its review to those specific claims.

**B.    Title VII**

**1.    Disparate Treatment**

In count one of his complaint, Plaintiff alleges racial discrimination in violation of Title VII under a disparate treatment theory. "In general, disparate treatment occurs when an 'employer simply treats some people less favorably than others' because of a certain characteristic, such as race[.]" *Jensen v. Solvay Chemicals, Inc.*, 625 F.3d 641, 660 (10th Cir. 2010) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). Plaintiff asserts that he received a lower-than-normal performance evaluation because his supervisor, Mr. Cassidy, "us[ed] a different rating system for him than he was using for white employees." (ECF No. 2 ¶ 13). He further contends that he was verbally reprimanded for filling out a time card during work hours, although white employees were not reprimanded for the same conduct. (*Id*. at ¶ 21). The Board argues that this claim must be dismissed because Plaintiff has failed to allege that he suffered an adverse employment action. (ECF No. 14-1, at 8).

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a). To establish a *prima facie* case of disparate treatment based on race, an employee must show that: (1) he is a member of a protected class, (2) his job performance was satisfactory, (3) he suffered an adverse employment action, and (4) he was treated differently from similarly situated employees outside his protected class. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). An adverse employment action within the scope of Title VII is "a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). Where, as here, the employee is not discharged, such actions typically take the form of a decrease in compensation, demotion, or loss of an opportunity for promotion. *See James*, 368 F.3d at 376.

Courts have recognized that a reprimand may constitute an adverse employment action where there is evidence that it led to further disciplinary action, such as termination. *See Newman v. Giant Food, Inc.*, 187 F.Supp.2d 524, 528-29 (D.Md. 2002) ("Such discipline, without evidence that the warning could lead to

13

further disciplinary action, such as termination, does not constitute an adverse employment action"); *Lewis v. Forest Pharms., Inc.*, 217 F.Supp.2d 638, 648 (D.Md. 2002) ("if evidence shows that a reprimand not only bruises an employee's ego or reputation, but also works a real, rather than speculative, employment injury, the reprimand becomes [an adverse] employment action"). Similarly, a poor performance evaluation does not, in and of itself, constitute an adverse employment action; "[r]ather, it is a mediate step, which, if relied upon for a true adverse employment action (e.g., discharge, demotion, etc.) becomes relevant evidence." *Jeffers v. Thompson*, 264 F.Supp.2d 314, 330 (D.Md. 2003) (quoting *Settle v. Baltimore Co.*, 34 F.Supp.2d 969, 1010 (D.Md. 1999) (internal marks omitted)); *see also Nye v. Roberts*, 145 Fed.Appx. 1, 6 (4th Cir. 2005) (per curiam) (where the employer uses a progressive form of discipline and a downgraded performance evaluation "thrust [the plaintiff] further along the discipline track and closer to termination," a jury could find that the plaintiff suffered a material change to his or her employment status).

Assuming, *arguendo*, that the Board uses a progressive disciplinary system, Plaintiff nevertheless fails to allege facts supporting an inference that the performance evaluation or reprimand at issue affected the "terms, conditions, or benefits of [his] employment," *Honor v. Booz-Allen & Hamilton, Inc.*, 383

F.3d 180, 188 (4th Cir. 2005), or "thrust [Plaintiff] further along the discipline track and closer to termination," *Nye*, 145 Fed.Appx. at 6. He has not, for example, alleged any denial of promotion, demotion, loss of pay, or similar action that would materially alter his employment status. Indeed, Plaintiff remains employed by Defendant in the same position he has occupied since 2008 and appears to enjoy the same terms, conditions, and benefits of employment as he did prior to the alleged discrimination. Consequently, he has not alleged an adverse employment action and the first count of his complaint cannot be sustained.

### 2. Retaliation

In count three, Plaintiff alleges that the Board retaliated against him in violation of Title VII when, in response to his filing of an internal complaint with the Board's human resources department, Ms. Pulley "simply ignored him and walked past him" when Plaintiff attempted to address her (ECF No. 2 ¶ 20), and Ms. McCourt verbally reprimanded him for "not reporting to the proper work location" and "filling out [a] . . . [t]ime [f]orm at work" (*id.* at ¶ 21). Defendant contends that Plaintiff cannot establish a *prima facie* case under these facts.

Title VII makes it unlawful for "an employer to discriminate against any of [its] employees . . . because he has opposed any practice made an unlawful practice by this

subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Protected activity of an employee, therefore, can take the form of either opposing a practice prohibited under Title VII (pursuant to the opposition clause) or making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII (pursuant to the participation clause). To allege a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in a protected activity, (2) his employer acted adversely against him, and (3) the protected activity was causally connected to the adverse action. *See Holland*, 487 F.3d at 218 (citing *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997)). The plaintiff's burden in this regard is "not onerous"; it requires only that he prove each element by a preponderance of the evidence. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The protected activity cited by Plaintiff is his lodging of an informal complaint, presumably regarding Mr. Cassidy's alleged disparate treatment, with the Board's human relations department on October 21, 2009. This activity is protected under the opposition clause of § 2000e-3(a). *See Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) ("The

opposition clause has been held to encompass informal protests,
such as voicing complaints to employers or using an employer's
grievance procedures."). Thus, Plaintiff has alleged that he
engaged in a protected activity and the first element of the
*prima facie* analysis is satisfied.

Plaintiff fails, however, to allege sufficiently the
second element of retaliation, *i.e.*, that he suffered an adverse
employment action. In the retaliation context, an employment
action is considered adverse if, from an objective perspective,
"it well might have dissuaded a reasonable worker from making or
supporting a charge of discrimination." *Burlington N. & Santa
Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citing *Rochon v.
Gonzales*, 438 F.3d 1211, 1219 (2006)) (internal marks omitted).
Nevertheless, "[a]n employee's decision to report discriminatory
behavior cannot immunize that employee from those petty slights
or minor annoyances that often take place at work and that all
employees experience." *Burlington*, 548 U.S. at 68.

Here, Plaintiff is unable to show that Defendant acted
adversely under the *Burlington* standard. The fact that Ms.
Pulley may have "ignored [Plaintiff] and walked past him" after
he made the internal complaint is precisely the kind of "petty
slight" or "minor annoyance" that the Supreme Court in
*Burlington* emphasized does not constitute retaliation.
Moreover, there is no indication that the verbal reprimand would

have discouraged a reasonable employee from making or supporting a charge of discrimination. Indeed, it appears to have done nothing to dissuade Plaintiff from subsequently filing his complaint with the EEOC and, as noted previously, he does not claim that the reprimand has altered the terms and conditions of his employment in any way.

Nor has Plaintiff alleged a sufficient nexus between his internal complaint and the verbal reprimand. While he asserts that the reprimand was issued "days after [his] complaints of discrimination" (ECF No. 2 ¶ 21), the salient fact he omits is the number of "days" involved – over four months' worth. Plaintiff filed his grievance with human resources on October 21, 2009 (*id.* at ¶ 19), and was reprimanded on February 24, 2010 (*id.* at ¶ 21). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Co. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). There is no bright-line rule regarding what constitutes a "very close" period of time in this context, but the Fourth Circuit has held that a lapse of three to four months between the protected activity and the alleged retaliation "is too long to

establish a causal connection by temporal proximity alone." *Pascual v. Lowe's Home Centers, Inc.*, 193 Fed.Appx. 229, 233 (4th Cir. 2006) (per curiam); *cf. Brockman v. Snow*, 217 Fed.Appx. 201, 207 (4th Cir. 2007) (three months "is sufficiently proximate to satisfy the requirement"). Here, even assuming that the verbal reprimand could constitute an adverse employment action, the fact that it was issued four months after Plaintiff lodged his complaint with the human resources department, by itself, is insufficient to support a claim that the events are causally linked. Accordingly, Plaintiff's retaliation claim must be dismissed.

### C. State Law Claims

Pursuant to 28 U.S.C. § 1367(c), the court has discretion to retain or dismiss nonfederal claims where, as here, the federal basis of the action is no longer applicable. District courts in the Fourth Circuit "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In deciding whether to exercise discretion, courts consider factors such as the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id*. (citing *Carnegie-Melon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1998)). Ultimately, supplemental jurisdiction "is

a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id.* (quoting *Carnegie-Melon Univ.*, 484 U.S. at 350).

Considering that the state law claims are closely related to Plaintiff's Title VII claims, and may be easily dispensed with, the court will exercise supplemental jurisdiction to address the remaining claims alleging violations of Title 20, intentional infliction of emotional distress, and negligent supervision and retention.

### 1.    Title 20

Plaintiff alleges discrimination and retaliation in violation of Title 20 of the State Government Article of the Annotated Code of Maryland in the second and fourth counts of his complaint.  Maryland courts routinely look to Title VII cases to determine the scope of liability under Title 20. *See, e.g., State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.*, 149 Md.App. 666, 695-96 (2003) (applying Title VII standards in Article 49B discriminatory case); *Chappel v. S. Maryland Hosp., Inc.*, 320 Md. 483, 494 (1990) (reading state anti-retaliation provision "in harmony" with federal provision). Although there may be some instances in which interpretations of the analogous state and federal provisions vary, none of those instances appear to be applicable here. *See Haas v. Lockheed*

*Martin Corp.*, 396 Md. 469, 482 n.10 (2007) (citing examples of divergent rule constructions). Indeed, while Plaintiff recognizes in his motion papers that there may be circumstances in which the Title VII analysis does not apply to claims under Title 20 (ECF No. 15, at 9 n.7), he does not assert that this case presents such a circumstance and he addresses the federal and state claims in the same section, citing federal case law exclusively. Thus, Plaintiff's Title 20 claims fail for the same reasons as those brought pursuant to Title VII.

### 2. Intentional Infliction of Emotional Distress

Count four of Plaintiff's complaint alleges that the Board "had knowledge" of the discriminatory actions of Mr. Cassidy and Ms. Pulley and that "its sanctioning and involvement in the[se] actions . . . was intentional and inflicted upon plaintiff severe mental and emotional distress." (ECF No. 2 ¶ 41). Defendant contends that this claim cannot be sustained because, under Maryland law, county boards of education cannot be liable for the intentional torts of their employees.

Maryland courts have recognized that a county school board may not be held liable for intentional torts under a *respondeat superior* theory because such torts are never considered within the scope of an individual's employment. *See James v. Frederick Co. Pub. Schools*, 441 F.Supp.2d 755, 760-61 (D.Md. 2006); *see also Hunter v. Bd. of Ed. of Montgomery Co.*, 292 Md. 481, 491

n.8 (1982). In *Hunter*, the Court of Appeals of Maryland noted that although individual employees may be liable for intentional torts, such liability does not extend to a school board because an intentional tortious action constitutes an abandonment of employment and is not "done in furtherance of the beneficent purposes of the educational system." *Hunter*, 292 Md. at 491 n.8. Because Plaintiff cannot hold a county board of education liable for intentional torts, his cause of action for intentional infliction of emotional distress cannot prevail.

Even if that were not the case, Plaintiff has nevertheless failed to state a claim for relief. To recover for intentional infliction of emotional distress under Maryland law, a plaintiff must show that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. *See Lasater v. Guttmann*, 194 Md.App. 431, 448 (2010) (citing *Harris v. Jones*, 281 Md. 560, 566 (1977)). All four elements must be established and liability for the tort should be imposed sparingly, as "its balm [is] reserved for those wounds that are truly severe and incapable of healing themselves." *Caldor, Inc. v. Bowden*, 330 Md. 632, 642 (1993) (quoting *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653 (1991)).

Assuming, *arguendo*, that Plaintiff satisfies the first two elements, his complaint does not contain particularized facts suggesting that he has suffered any emotional distress related to Defendant's alleged conduct, much less that such distress was sufficiently severe. To state a claim of intentional infliction of emotional distress, a plaintiff must allege that he suffered "a severely disabling emotional response to the defendant's conduct." *Harris*, 281 Md. at 570. The level of distress must be "so severe that no reasonable man should be expected to endure it," *id*. at 571, and it must have "disrupted [the plaintiff's] ability to function on a daily basis," *Bryant v. Better Bus. Bureau of Greater Md.*, 923 F.Supp. 720, 750 (D.Md. 1996). Plaintiff has failed to allege any facts suggesting that he suffered a severely disabling emotional response to Defendant's conduct. Although he attaches a declaration to his opposition papers, asserting that he "suffer[s] from panic attacks, anxiety, crying, loss of sleep, loss of appetite, as well as feelings of being distraught and frustrated due to actions of the Board" (ECF No. 15-2 ¶ 2), the court's inquiry in the context of a Rule 12(b)(6) motion is generally "limited to the complaint and the documents attached thereto or incorporated by reference." *Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F.Supp.2d 903, 920 (D.Md. 2008). Even if the court were to consider the declaration, however, Plaintiff still does not

claim that the Board's conduct impaired his daily functioning in any respect. *See, e.g., Takacs v. Fiore*, 473 F.Supp.2d 647, 652 (D.Md. 2007) (plaintiff alleged to have suffered "severe depression, anxiety, sleeplessness, headaches and [being] sick to her stomach" failed to state a claim for intentional infliction of emotional distress absent any allegation "that she has been unable to function on a daily basis"). Thus, even if Plaintiff's *respondeat superior* theory were viable, he has failed to state a cause of action for intentional infliction of emotional distress.

### 3. Negligent Supervision and Retention

Plaintiff alleges in the fifth count of his complaint that the Board failed to exercise reasonable care in "supervising and retaining employees," despite "numerous warnings and complaints." (ECF No. 2 ¶ 36). Defendant argues that this claim must be dismissed because the alleged discriminatory and retaliatory conduct of the employees does not constitute a violation of Maryland common law.

In Maryland, a plaintiff may not maintain a negligent supervision and retention claim when the underlying conduct is not actionable under Maryland common law. *See* Bryant, 923 F.Supp. at 751 (citing *Hays v. Patton-Tully Transp. Co.*, 844 F.Supp. 1221, 1223 (W.D.Tenn. 1993)). Maryland courts have repeatedly held that "Title VII may not form the predicate for

claims of negligent retention and supervision" because such claims are "preempted by the Maryland Worker's Compensation Act ["MWCA"], Md. Code Ann., Labor & Employ. Art, § 9-501 *et seq*." *Demby v. Preston Trucking Co., Inc.*, 961 F.Supp. 873, 881-82 (1997); *see also Bryant*, 923 F.Supp. at 751. Indeed, the MWCA "provides the exclusive remedy for employee injuries arising out of and in the course of employment." *Hart v. Harbor Court Assocs.*, 46 F.Supp.2d 441, 444 n.4 (D.Md. 1997).

Plaintiff relies on *Ruffin Hotel Corp. of Md. v. Gasper*, 418 Md. 594 (2011), in support of his argument that negligent supervision and retention claims based on Title VII and Title 20 are not preempted *per se*. (ECF No. 15, at 17). It is true that the *Ruffin* court held, in part, that Title VII and former Article 49B did not preempt the plaintiff's negligent supervision and retention claim. The rationale for that holding, however, was that, although the plaintiff's allegations were founded in statutorily prohibited sexual harassment, an entirely independent cause of action existed under common law assault and battery that predated the relevant sexual harassment statutes. *Ruffin*, 418 Md. at 615-16. Thus, under *Ruffin*, a plaintiff may bring negligence claims based on statutorily proscribed behavior if an independent cause of action under common law would have existed prior to enactment of the statute.

Here, Plaintiff's claims are founded on racial discrimination, which is statutorily proscribed by Title VII and Title 20. Unlike the sexual harassment claims examined in *Ruffin*, racial discrimination does not have a common law tort corollary. *See Braxton v. Domino's Pizza LLC*, Civ. No. RDB 06-1191, 2006 WL 3780894, at *5 (D.Md. Dec. 21, 2006) ("there is no common law tort for discrimination on the basis of race") (citing *Montrose Christian School Corp. v. Walsh*, 363 Md. 565, 582-83 (2001)). Further, Plaintiff's claim in this regard may not be predicated on his intentional infliction of emotional distress claim because, as discussed previously, he has failed to state a claim as to that cause of action. Accordingly, the fifth count of his complaint must be dismissed.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted. A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge